# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

JAMES A. CORRIVEAU, SR.,
        Appellant,

      v.

DEPARTMENT OF THE NAVY,
        Agency.

DOCKET NUMBER
PH-1221-14-0377-B-1

DATE: September 6, 2023

# THIS ORDER IS NONPRECEDENTIAL[1]

<u>James G. Noucas, Jr.</u>, Esquire, Portsmouth, New Hampshire, for the appellant.

<u>Debra M. Evans</u>, Esquire, Norfolk, Virginia, for the agency.

### BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

### REMAND ORDER

¶1      The appellant has filed a petition for review of the remand initial decision, which denied his request for corrective action in this individual right of action (IRA) appeal. For the reasons discussed below, we GRANT the appellant's petition for review, VACATE the remand initial decision, FIND that the appellant

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

made some protected disclosures that were contributing factors in certain personnel actions, and REMAND the case to the regional office for further adjudication in accordance with this Remand Order.

## BACKGROUND

¶2 The appellant was a Pipefitter at the agency's Portsmouth Naval Shipyard, Naval Facilities Engineering Command (NAVFAC). *Corriveau v. Department of the Navy*, MSPB Docket No. PH-1221-14-0377-W-1, Initial Appeal File (IAF), Tab 1 at 2. On May 25, 2010, he and three of his coworkers sent a letter to U.S. Senators Susan Collins and Olympia Snowe alleging that their supervisors were illegally retaliating against them and requesting an investigation into their behavior. IAF, Tab 49 at 33-36. Approximately 3 days later, on or about May 28, 2010, the appellant contacted the NAVFAC Headquarters Inspector General (IG) Hotline and asserted that he and some of his coworkers in the Public Works Department believed that they were experiencing "endless harassment" at the hands of their supervisors. *Id.* at 17-19.

¶3 In response to the letter to Senators Collins and Snowe, the agency held a meeting on June 15, 2010, which was attended by all four signees, as well as the Production Division Manager, R.G.; a Labor Relations Specialist, C.M.; and the Chief Steward, C.R. *Id.* at 40, 42; Hearing Transcript, Day 1 (HT1) at 159 (testimony of R.G.); Hearing Transcript, Day 2 (HT2) at 316 (testimony of the appellant), 486 (testimony of C.M.). On July 28, 2010, the appellant sent a follow-up letter to Senator Collins stating that R.G., who had been identified as one of the retaliators, was present at the meeting, that nothing was resolved at the meeting, and that he still was experiencing whistleblower retaliation. IAF, Tab 49 at 46.

¶4 Thereafter, the appellant filed a Board appeal on July 21, 2010, challenging his nonselection for a Performance Assessment Representative (PAR) position and raising whistleblower retaliation. *See Corriveau v. Department of the Navy*,

MSPB Docket No. PH-3443-10-0542-I-1, Initial Decision (0542 ID) (Sept. 27, 2010); IAF, Tab 1 at 59-60. The administrative judge issued an initial decision dismissing the appeal on September 27, 2010, finding that the appellant failed to allege any basis for the Board's jurisdiction. *Id.* The appellant did not seek review and, as a result, the initial decision became the Board's final decision. *Id.* at 3.

¶5 In the meantime, the appellant filed a complaint with the Office of Special Counsel (OSC) in mid-September 2010. IAF, Tab 4 at 20. He alleged that the agency took several actions against him as a result of his protected disclosures. IAF, Tab 1 at 64-65, Tab 4 at 34. He also claimed that he overheard R.G. stating on July 28, 2010, that the four June 15, 2010 meeting participants had "bullseyes on their backs" and that he intended to "get every one of them." IAF, Tab 1 at 64-65. On November 30, 2010, OSC issued a close-out letter advising the appellant that it had terminated its inquiry into his allegations and that he had the right to seek corrective action from the Board within 65 days after the date of the letter. IAF, Tab 4 at 10. He did not file a Board appeal at that time.

¶6 In September and October 2012, the appellant contacted several elected representatives and raised complaints concerning the alleged illegal practices of his supervisors. IAF, Tab 49 at 52-55. He then subsequently filed a second complaint with OSC on March 21, 2013. IAF, Tab 1 at 27. Therein, he named R.G. and the Head of the Public Works Department, J.W., as the responsible agency officials. *Id.* at 21. He included the personnel actions that he alleged in his 2010 complaint and also asserted the following: (1) he was denied training since February 2011; (2) he applied for and was offered a PAR position, but he declined the position because it was temporary; and (3) he was not selected for 16 positions between December 4, 2011, and December 20, 2012. *Id.* at 38-40, 101-29. In a September 16, 2013 letter responding to the complaint, OSC advised the appellant that it would "not revisit the allegations and personnel actions that . . . [were] already analyzed in connection with [his] prior complaint." *Id.*

at 11. In its September 30, 2013 letter closing the file, OSC stated that the personnel actions included in the appellant's complaint were nonselections for several positions, denial of the opportunity to serve as an acting supervisor, and the agency's failure to pay him an on-the-spot award. *Id.* at 9.

¶7        On November 25, 2013, the appellant filed this IRA appeal. *Id.* at 1. The administrative judge held the requested hearing and issued an initial decision denying his request for corrective action. IAF, Tab 67, Initial Decision (ID). The appellant petitioned for review of the initial decision and the Board issued a Remand Order, vacating the decision. *Corriveau v. Department of the Navy*, MSPB Docket No. PH-1221-14-0377-W-1, Remand Order (Sept. 4, 2015). In the Remand Order, the Board ordered the administrative judge, among other things, to identify the alleged personnel actions and protected disclosures properly before the Board in the appeal, to reexamine the contributing factor evidence, to make credibility findings of key witnesses, and to perform a clear and convincing analysis under *Whitmore v. Department of Labor*, 680 F.3d 1353 (Fed. Cir. 2012), paying special attention to the strength of the agency's motive to retaliate in light of the apparent direct evidence and other circumstantial evidence of R.G.'s retaliatory animus. Remand Order, ¶¶ 13-15, 18-22.

¶8        On remand, the administrative judge did not open the record except to seek a copy of the appellant's 2010 OSC complaint, and she issued a remand initial decision that again denied the appellant's corrective action request. *Corriveau v. Department of the Navy*, MSPB Docket No. PH-1221-14-0377-B-1, Remand File, Tab 8, Remand Initial Decision (RID). She found that 6 of the 8 disclosures that the appellant made were protected under 5 U.S.C. § 2302(b)(8), that the appellant proved that his protected disclosures were a contributing factor in 3 of the 17 alleged personnel actions properly before the Board in the appeal, and that the agency showed by clear and convincing evidence that it would have taken the 3 personnel actions in the absence of his disclosures. RID at 7-26.

¶9      The appellant has filed a petition for review of the remand initial decision, primarily arguing that the administrative judge failed to comply with several of the Board's instructions in the Remand Order, including its instructions to perform a sound credibility analysis of significant witnesses and to perform a clear and convincing analysis in accordance with *Whitmore*. Remand Petition for Review (RPFR) File, Tab 1. The agency has filed a response in opposition, to which the appellant has replied. RPFR File, Tabs 3-4.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶10     It is undisputed that all of the personnel actions at issue here took place prior to the December 27, 2012 enactment of the Whistleblower Protection Enhancement Act (WPEA). IAF, Tab 1 at 36-40, Tab 15 at 6-7. Therefore, the pre-WPEA standards concerning the scope of an IRA appeal apply to this appeal.[2] *See Scoggins v. Department of the Army*, 123 M.S.P.R. 592, ¶ 7 (2016); *Rebstock Consolidation v. Department of Homeland Security*, 122 M.S.P.R. 661, ¶¶ 7-8 (2015).

¶11     Under pre-WPEA law, after establishing the Board's jurisdiction, as the appellant did here, he then must establish a prima facie case of whistleblower retaliation by proving by preponderant evidence that he made a protected disclosure that was a contributing factor in a personnel action taken against him. *Scoggins*, 123 M.S.P.R. 592, ¶ 8. If the appellant meets that burden, then the Board shall order such corrective action unless the agency shows by clear and convincing evidence that it would have taken the same personnel action in the absence of the protected disclosure. *Id.*

---

[2] During the pendency of this appeal, the National Defense Authorization Act for Fiscal Year 2018 (NDAA), Pub. L. No. 115-91, 131 Stat. 1283, was signed into law on December 12, 2017. Section 1097 of the NDAA amended various provisions of title 5 of the United States Code. Our decision to remand this appeal and our findings herein would be the same under both pre- and post-NDAA law.

**The appellant established that he made disclosures protected under 5 U.S.C. § 2302(b)(8).**

¶12        Pre-WPEA law defined a protected disclosure as a disclosure of information that an appellant reasonably believes evidences a violation of any law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. 5 U.S.C. § 2302(b)(8)(A) (2011); *Scoggins*, 123 M.S.P.R. 592, ¶ 11.  A reasonable belief exists if a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the appellant could reasonably conclude that the actions of the Government evidence one of the categories of wrongdoing listed in section 2302(b)(8)(A).  *Scoggins*, 123 M.S.P.R. 592, ¶ 11.  To establish that he made a protected disclosure, the appellant need not prove that the matter disclosed actually established one of the types of wrongdoing listed under section 2302(b)(8)(A); rather, he must show that the matter disclosed was one that a reasonable person in his position would have believed evidenced any of the situations specified in 5 U.S.C. § 2302(b)(8).  *Id.*

¶13        The appellant identified the following eight protected disclosures, labeled Disclosures A-H, that he exhausted before OSC in connection with this appeal: (A) disclosures made in his May 25, 2010 letter to Senators Collins and Snowe and his May 28, 2010 complaint to the IG hotline; (B) disclosures made during the June 15, 2010 meeting held in response to the May 25, 2010 letter to Senators Collins and Snowe; (C) disclosures contained in the appellant's July 7, 2010 letter to Senator Collins; (D) disclosures made during the course of the appellant's 2010 Board appeal and his 2010 OSC complaint; (E) disclosures made in his September and October 2012 letters to several elected representatives; (F) disclosures made during a discussion with the NAVFAC's Head of Safety on September 15, 2010; (G) disclosures made during a meeting with the Shipyard Commander and J.W. in May 2011; and (H) disclosures concerning mold made in 2010 or 2011, and then

again in an all-hands meeting on March 6, 2013.  IAF, Tab 1 at 31-35, Tab 49 at 4-5.

> *The appellant has shown that Disclosures A, B, C, D, E, and F are protected.*

¶14    Disclosure A consists of the appellant's May 25, 2010 letter to Senators Collins and Snowe and his May 28, 2010 complaint to the IG hotline.  IAF, Tab 1 at 31, 45-58, Tab 49 at 17-19.[3]  In these disclosures, the appellant complains of "endless harassment" by his supervisors in retaliation for "speak[ing] up," including, among other things, denying them high pay for duties performed under hazardous conditions, denying them the opportunity to receive fill-in time, i.e., the opportunity to be an acting supervisor, overlooking them for several positions, eliminating their break room, and yelling and screaming at them in certain instances.  IAF, Tab 1 at 31, 45-48, Tab 49 at 17-19.

¶15    Concerning his complaint about high pay, the appellant failed to specify the law, rule, or regulation the agency allegedly violated when he made the disclosure.  However, an employee need not identify a statutory or regulatory provision by title or number to receive protection under the whistleblower protection laws when the employee's statements and the circumstances of those statements clearly implicate an identifiable law, rule, or regulation.  *See Langer v. Department of the Treasury*, 265 F.3d 1259, 1266 (Fed. Cir. 2001).  The appellant only needs to show that he reasonably believed that his disclosure evidenced one of the conditions set forth in 5 U.S.C. § 2302(b)(8).  *Chavez v. Department of Veterans Affairs*, 120 M.S.P.R. 285, ¶ 18 (2013).  In the May 25, 2010 letter to Senators Collins and Snowe, the appellant and the other signees wrote that an

_____

[3] Because pre-WPEA standards apply to this appeal, the appellant cannot obtain corrective action in this appeal for reprisal based on his 2010 complaint to the IG hotline as protected activity under 5 U.S.C. § 2302(b)(9)(C); rather, the Board only may order corrective action for reprisal as a result of a prohibited personnel practice described in section 2302(b)(8).  *See Rebstock Consolidation*, 122 M.S.P.R. 661, ¶ 7; *Colbert v. Department of Veterans Affairs*, 121 M.S.P.R. 677, ¶ 7 (2014).

employee is entitled to high pay when they are "asked to perform duties under hazardous conditions," and they claimed that their supervisors would give it to other employees, but not to them. IAF, Tab 1 at 45. During the proceedings, C.M., a Labor Relations Specialist, testified that there is a specific regulation in the Code of Federal Regulations (5 C.F.R. § 532.511) that outlines when work situations warrant high pay and that he discussed the regulation with the union, the appellant, and some of his coworkers. HT2 at 492-93. Under these circumstances, we find that the appellant disclosed a matter that a reasonable person in his position believed evidenced a violation of the regulation concerning high pay. *See Mogyorossy v. Department of the Air Force*, 96 M.S.P.R. 652, ¶¶ 12-13 (2004) (finding that the appellant's disclosure concerning the agency's failure to give its employees breaks was protected despite his failure to identify the specific law, rule, or regulation that the agency allegedly violated); *Berkley v. Department of the Army*, 71 M.S.P.R. 341, 351-52 (1996) (finding that the appellant made a protected disclosure when he complained to the IG and his supervisors that he improperly was denied overtime pay).

¶16      Further, an abuse of authority occurs when there is an arbitrary or capricious exercise of power by a Federal official or employee that adversely affects the rights of any person or results in personal gain or advantage to himself or preferred other persons. *See Herman v. Department of Justice*, 115 M.S.P.R. 386, ¶ 11 (2011). The Board has held that harassment by a supervisor may constitute an abuse of authority. *See, e.g.*, *Ayers v. Department of the Army*, 123 M.S.P.R. 11, ¶¶ 14-20 (2015); *Herman*, 115 M.S.P.R. 386, ¶¶ 11-12; *Murphy v. Department of the Treasury*, 86 M.S.P.R. 131, ¶ 6 (2000). Here, four employees signed the letter to the Senators requesting an investigation into their supervisors' alleged retaliatory behavior, claiming that they believed that the ongoing harassment they were experiencing was illegal. IAF, Tab 1 at 45. They supported their assertions with several acts of alleged retaliation. *Id.* at 45-48. Under these circumstances, we find that the appellant disclosed a matter that a

reasonable person in his position believed evidenced an abuse of authority. *Herman*, 115 M.S.P.R. 386, ¶¶ 11-12.

¶17     Disclosure B includes disclosures that the appellant made during the June 15, 2010 meeting held in response to the May 25, 2010 letter to Senators Collins and Snowe.  IAF, Tab 1 at 31.  The appellant states that R.G. was present at the meeting and heard "first hand [their] complaints about his actions and practices that [they] felt were illegal and inappropriate from the way he treated [them] as employees to, more importantly, hiring and promotion practices."  *Id.*; HT2 at 318-19 (testimony of the appellant).  R.G. testified that the signees voiced their concerns during the meeting, including their concerns about leadership training and advancement, a hostile work environment, and retaliation.  HT1 at 159-62.  Under these circumstances, we find that the appellant disclosed a matter that a reasonable person in his position believed evidenced a violation of a law, rule, or regulation, or an abuse of authority.  *See Herman*, 115 M.S.P.R. 386, ¶¶ 11-12; *Murphy*, 86 M.S.P.R. 131, ¶¶ 6-7.

¶18     Disclosure C consists of disclosures contained in the appellant's July 7, 2010 letter to Senator Collins.  IAF, Tab 1 at 32, Tab 49 at 34.  In the letter, the appellant referenced his May 25, 2010 letter to Senators Collins and Snowe, and stated that R.G., who had been identified as one of the retaliators, was present at the meeting and that nothing was resolved.  IAF, Tab 49 at 34.  He also stated that the whistleblower retaliation was ongoing, and he listed several personnel actions that he believed were retaliatory.  *Id.*  Under these circumstances, we find that the appellant disclosed a matter that a reasonable person in his position believed evidenced a violation of whistleblower protection laws or an abuse of authority.  *See Herman*, 115 M.S.P.R. 386, ¶¶ 11-12; *Mogyorossy*, 96 M.S.P.R. 652, ¶¶ 12-13; *Murphy*, 86 M.S.P.R. 131, ¶¶ 6-7.

¶19     Disclosure D consists of disclosures made during the course of the appellant's 2010 Board appeal and his 2010 OSC complaint.  IAF, Tab 1 at 32-33.  In his 2010 Board appeal, he challenged his nonselection for the PAR position

and raised an affirmative defense of whistleblower reprisal. IAF, Tab 1 at 32, 59-60; 0542 ID. In his 2010 OSC complaint, he alleged that the agency took several actions against him as a result of his protected disclosures. IAF, Tab 1 at 64-65, Tab 4 at 34.

¶20	Because pre-WPEA standards apply to this appeal, it is immaterial whether the appellant's 2010 Board appeal and OSC complaint constitute protected activity under 5 U.S.C. § 2302(b)(9)(A)(i) or (C). *See Colbert v. Department of Veterans Affairs*, 121 M.S.P.R. 677, ¶ 7 (2014). Nevertheless, the disclosures contained in his 2010 OSC complaint can be considered under 5 U.S.C. § 2302(b)(8)(B)(i). *See id.*, ¶ 8 (explaining that, under pre-WPEA law, disclosures contained in an OSC complaint can be protected under section 2302(b)(8)); *see also* 5 U.S.C. § 2302(b)(8)(B)(i) (2011). The appellant's OSC complaint raised the substance of his disclosures contained in the May 25, 2010 letter to Senators Collins and Snowe and detailed R.G.'s harassment. IAF, Tab 1 at 63-64, Tab 4 at 34. For the reasons stated above, we find that the appellant disclosed a matter that a reasonable person in his position believed evidenced a violation of the regulation concerning high pay or an abuse of authority. *See Herman*, 115 M.S.P.R. 386, ¶¶ 11-12; *Mogyorossy*, 96 M.S.P.R. 652, ¶¶ 12-13.

¶21	Disclosure E consists of disclosures made in his September and October 2012 letters to several elected representatives detailing the alleged illegal practices of his supervisors and requesting an investigation into their actions. IAF, Tab 1 at 33, 67-70, Tab 49 at 52-55. In these letters, the appellant voiced his concerns, among other things, about the illegal hiring practices within NAVFAC, including nepotism and the canceling and reposting of vacancy announcements when R.G.'s and J.W.'s preferred candidates did not make the certificate of eligibles. IAF, Tab 1 at 67-70. In his appeal, the appellant included a "Nepotism Chart," in which he listed several individuals within NAVFAC who he claimed received their position as a result of nepotism. IAF, Tab 49 at 94-95.

Under these circumstances, we find that the appellant disclosed a matter that a reasonable person in his position believed evidenced a violation of a law, rule, or regulation. *See Becker v. Department of Veterans Affairs*, 76 M.S.P.R. 292, 297 (1997) (explaining that disclosures that agency officials did not post job announcements, but instead hired friends and relatives, constituted claims of nepotism and violation of law that may form the basis for an IRA appeal); *see also McDonnell v. Department of Agriculture*, 108 M.S.P.R. 443, ¶¶ 10-13 (2008) (finding that the appellant had made a nonfrivolous allegation of statutory violations of law when she made a disclosure about hiring and selection improprieties).

¶22    Disclosure F includes disclosures that the appellant made during a discussion with the NAVFAC's Head of Safety on September 15, 2010, regarding safety concerns about unsafe scaffolding. IAF, Tab 1 at 34. The appellant testified that he informed the Head of Safety that the scaffolding as erected, which was approximately 27 to 30 feet above the work floor, was moving and not safe, and that the Head of Safety immediately agreed. HT2 at 333. J.W. testified that, partly as a result of the "scaffolding incident," the appellant's immediate supervisor, D.W., was removed from his supervisory position. *Id.* at 403. R.G. agreed that the scaffolding at issue was a reason for the supervisor's downgrade and also agreed that that the scaffolding was "unsafe." HT1 at 223-34.

¶23    Concerning a disclosure of a substantial and specific danger to public health or safety, the inquiry into whether a disclosed danger is sufficiently substantial and specific to warrant protection under whistleblower protection laws is guided by several factors, including (1) "the likelihood of harm resulting from the danger," (2) "when the alleged harm may occur," and (3) "the nature of the harm," i.e., "the potential consequences." *Chambers v. Department of the Interior*, 515 F.3d 1362, 1369 (Fed. Cir. 2008). Under these circumstances, we find that the appellant disclosed a matter that a reasonable person in his position believed evidenced a substantial and specific danger to public health or safety

because the appellant, or one of his coworkers, could have suffered substantial injury had he fallen off the scaffolding or had the scaffolding collapsed.  *See Chavez*, 120 M.S.P.R. 285, ¶ 21 (finding that disclosures regarding failure to change a patient's dressings were protected, regardless of whether harm actually occurred, because the potential harm was readily foreseeable).

*The appellant has failed to show that Disclosures G and H are protected.*

¶24        Disclosure G concerns disclosures that the appellant made during a meeting with the Shipyard Commander and J.W. in May 2011.  IAF, Tab 1 at 34.  During the meeting, the appellant raised concerns that NAVFAC had not had a safety meeting since he joined.  *Id.*  Although the appellant claimed that the lack of a safety meeting violated an agency practice or policy, he did not show that it violated a law, rule, or regulation.  *Id.*  Under these circumstances, we find that the appellant has failed to meet his burden of showing that this disclosure is protected under 5 U.S.C. § 2302(b)(8).  *See Chavez*, 120 M.S.P.R. 285, ¶ 24 (finding that the appellant's disclosure of a violation of agency policy or practice, as opposed to a law, rule, or regulation, is not protected under section 2302(b)(8)).

¶25        Disclosure H consists of disclosures that the appellant made in 2010 or 2011, and then again on March 6, 2013, regarding his concerns with mold in certain areas of Building 43 in the Public Works Shop.  IAF, Tab 1 at 34; HT2 at 335-36.  Although the appellant generally claims that he discussed the mold problem with R.G. at various times starting in "roughly 2010, 2011," he does not allege specifics regarding the conversations, including what he said and when he said it.  IAF, Tab 1 at 34; HT2 at 336.  An appellant's disclosures must be specific and detailed, not vague allegations of wrongdoing.  *See Linder v. Department of Justice*, 122 M.S.P.R. 14, ¶ 14 (2014).  The appellant's disclosures

here during the 2010 and 2011 timeframe do not meet this standard and, therefore, we find that they are not protected under 5 U.S.C. § 2302(b)(8).[4]

The appellant established that the agency took several personnel actions under 5 U.S.C. § 2302(a)(2)(A) against him.

¶26    Here, the appellant alleged that the agency took several personnel actions against him as a result of his protected whistleblowing, including numerous nonselections, denial of fill-in time and leadership training, and a delay or denial of an on-the-spot award. IAF, Tab 1 at 36-40. Under pre-WPEA law, the definition of "personnel action" included, among other things, the following: a promotion; a detail, transfer, or reassignment; and "a decision concerning pay, benefits, or awards, or concerning education or training if the education or training may reasonably be expected to lead to an appointment, promotion, performance evaluation, or other [personnel] action." 5 U.S.C. § 2302(a)(2)(A)(ii), (iv), and (ix) (2011).

¶27    After reviewing the record, including documents related to the appellant's two OSC complaints and his grievances, we find that the following 17 actions constitute personnel actions under 5 U.S.C. § 2302(a)(2)(A) that are properly before the Board in this appeal because they were exhausted before OSC for the first time in his second complaint and were not the subject of a grievance: (1) nonselection for a Production Shop Planner position, which he applied to on November 30, 2011; (2) nonselection for a Production Control position, which he applied to on December 4, 2011; (3) nonselection for an Engineering Technician

---

[4] As to his disclosure concerning the mold problem during an all-hands meeting held on March 13, 2013, we find this disclosure irrelevant, as it took place several months after the latest personnel action in this appeal and could not have been a contributing factor in any of the personnel actions at issue. *See Davis v. Department of Defense*, 106 M.S.P.R. 560, ¶ 12 (2007) (holding that, because the complained-of personnel action predated the protected disclosure, there is no way that the disclosure could have contributed to the personnel action), *aff'd sub nom. Davis v. Merit Systems Protection Board*, 278 F. App'x 1009 (Fed. Cir. 2008). Therefore, we will not address this disclosure further.

position, which he applied to on December 9, 2011; (4) nonselection for an Industrial Engineering Technician position, which he applied to on January 20, 2012; (5) nonselection for a PAR position, which he applied to on February 10, 2012;[5] (6) nonselection for a Utilities Billing Analyst position, which he applied to on February 14, 2012; (7) nonselection for an Engineering Technician position, which he applied to on February 19, 2012; (8) nonselection for an Engineering Technician position, which he applied to on May 16, 2012; (9) nonselection for an Administrative Specialist position, which he applied to on May 22, 2012; (10) nonselection for a Maintenance Supervisor position, which he applied to on June 4, 2012; (11) nonselection for a PAR position, which he applied to on September 9, 2012; (12) nonselection for a PAR position, which he applied to on November 2, 2012; (13) nonselection for a Base Support Vehicles and Equipment Site Director position, which he applied to on November 25, 2012; (14) nonselection for a Utilities Billing Analyst position, which he applied to on December 4, 2012; (15) denial of fill-in time; i.e., the opportunity to be an acting supervisor, between November 2011 and August 2012; (16) denial or delay of an on-the-spot award in September 2010;[6] and (17) denial of leadership training on February 5, May 11, and August 9, 2011.[7]  IAF, Tab 1 at 36-40, Tab 49 at 5-6, 57, 208-09.

---

[5] The appellant identified his nonselection for a temporary PAR position, which he applied to on July 25, 2011, as a personnel action at issue. IAF, Tab 1 at 38. However, we find that the appellant has not proven that the agency took a personnel action against him here because he asserted that he voluntarily decided to decline the agency's offer of the position. *Id.*

[6] In his petition for review, the appellant claims, contrary to the administrative judge's conclusion, that his on-the-spot award was denied—not delayed. RPFR File, Tab 1 at 22-24. On remand, the administrative judge shall reexamine the evidence pertaining to the on-the-spot award and, after making the relevant credibility determinations, decide whether the personnel action at issue is a delay or a denial of the award.

[7] In the remand initial decision, the administrative judge analyzed "harassment" as a separate personnel action. RID at 26-27. Although the Board has found that the

<u>The appellant met his burden of showing that his protected disclosures were a contributing factor in four of the personnel actions taken against him.</u>

¶28     An employee who establishes that he made a protected disclosure has the additional burden of proving by preponderant evidence that his disclosure was a contributing factor in the covered personnel actions. *See Shibuya v. Department of Agriculture*, 119 M.S.P.R. 537, ¶ 22 (2013). The most common way of proving that a disclosure was a contributing factor in a personnel action is the knowledge/timing test. *Shannon v. Department of Veterans Affairs*, 121 M.S.P.R. 221, ¶ 23 (2014). Under that test, an appellant can prove the contributing factor element through evidence that the official taking the personnel action knew of the whistleblowing disclosure and took the personnel action within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action. *Id.* An appellant may establish an official's constructive knowledge of a protected disclosure by demonstrating that an individual with actual knowledge of the disclosure influenced the official accused of taking the retaliatory action. *Aquino v. Department of Homeland Security*, 121 M.S.P.R. 35, ¶ 19 (2014). The U.S. Supreme Court has adopted the term "cat's paw" to describe a case in which a particular management official, acting because of an improper animus, influences an agency official who is unaware of the improper animus when implementing a personnel action. *Id.* (citing *Staub v. Proctor Hospital*, 562 U.S. 411 (2011)).

---

creation of a hostile work environment may constitute a personnel action under 5 U.S.C. § 2302(a)(2)(A) if it meets the statutory criteria, i.e., constitutes a significant change in duties, responsibilities, or working conditions, *see Skarada v. Department of Veterans Affairs*, 2022 MSPB 17, ¶ 16, we need not address that question here. Specifically, each of the actions alleged by the appellant that comprise a potential hostile work environment claim constitute individual personnel actions under 5 U.S.C. § 2302(a)(2)(A)(ii), (iv), and (ix), and have been analyzed as such. Accordingly, those actions would not also constitute "any other" significant change in duties, responsibilities, or working conditions under 5 U.S.C. § 2302(a)(2)(A)(xi) (2011).

¶29    Here, the appellant alleges that R.G. and J.W. were the retaliating officials. IAF, Tab 1 at 36. We found above that Disclosures A, B, C, D, E, and F were protected under 5 U.S.C. § 2302(b)(8). Based on the record, including witness testimony, we find that R.G. was aware of Disclosures A, B, and F prior to the dates of the personnel actions at issue and that J.W. was aware of Disclosures A and E prior to the dates of the personnel actions at issue. HT1 at 158-62, 168, 170, 224 (testimony of R.G.); HT2 at 383-84, 404 (testimony of J.W.). As to Disclosures C and D, we find that the appellant did not show that either R.G. or J.W. was aware of the disclosures prior to the taking of the personnel actions at issue. HT1 at 168, 170 (testimony of R.G.).

*The appellant established that his protected disclosures were a contributing factor in personnel actions 10, 15, 16, and 17.*

¶30    The record shows, as to personnel action 10 (nonselection for a Maintenance Supervisor position), that R.G. was the chairman of the selection board and that J.W. was the selecting official. IAF, Tab 36 at 25, 35; HT1 at 198-200 (testimony of R.G.). The appellant applied and the selection took place less than 2 years after Disclosures E and F. IAF, Tab 35 at 4, Tab 37 at 26, Tab 49 at 91. Under these circumstances, we find that the appellant has shown that his nonselection occurred within a period of time such that a reasonable person could conclude that his protected disclosures were a contributing factor in the personnel action under the knowledge/timing test.[8] *See Schnell v. Department of the Army*, 114 M.S.P.R. 83, ¶ 22 (2010) (finding that a personnel action taken

---

[8] Because we find that the decision makers had actual knowledge of the appellant's protected disclosures regarding this nonselection, a cat's paw analysis is not necessary for the appellant to meet his burden on contributing factor. Nevertheless, on remand, when the administrative judge performs her clear and convincing analysis, she shall consider the appellant's arguments concerning the irregularities in the selection process, R.G.'s influence over the selection process and panel, and the likelihood that J.W. would accept R.G.'s recommendation without question. RPFR File, Tab 1 at 12-13.

within approximately 1 to 2 years of the appellant's disclosures satisfies the knowledge/timing test).

¶31     As to personnel actions 15 (denial of fill-in time), 16 (delay or denial of an on-the-spot award), and 17 (denial of leadership training), R.G. testified that he made or had the discretion to make the decision to deny or delay these personnel actions, all of which took place within 2 years of the appellant's protected disclosures.  HT1 at 140, 142, 153, 185; IAF, Tab 1 at 36-38.  We similarly find, therefore, that the appellant has shown that these personnel actions occurred within a period of time such that a reasonable person could conclude that his protected disclosures were a contributing factor in them under the knowledge/timing test.  *Schnell*, 114 M.S.P.R. 83, ¶ 22.

> *The appellant failed to establish that his protected disclosures were a contributing factor in personnel actions 1-9 and 11-14.*

¶32     Although the appellant generally alleges that R.G. and J.W. played a role in all of the nonselections at issue, he has not shown that they were involved in taking personnel actions 1-9 and 11-14 or that they influenced the decision makers in any way.[9]  RPFR File, Tab 1 at 4.

¶33     Concerning personnel actions 1 and 9 (his nonselections for a Production Shop Planner position and an Administrative Specialist position), he stated that he made the certificate of eligibles but was never interviewed for the positions.  IAF, Tab 1 at 38-39.  However, he did not present any evidence regarding the nonselections, including who made the decisions concerning interviews.  In the

---

[9] Although there are 14 nonselections at issue in this appeal, the administrative judge stated for the record prior to the start of the second day of the hearing that the appellant's prime focus of his appeal was personnel action 10 (his nonselection for a Maintenance Supervisor position).  HT2 at 298-99.  The appellant's attorney agreed with this statement and the appellant, during his testimony, agreed as well.  HT2 at 299, 306.  As a result, the appellant focused much of the hearing on the Maintenance Supervisor nonselection and presented scant evidence concerning the other nonselections at issue in this appeal.  HT1, HT2.

absence of any evidence concerning either R.G.'s or J.W.'s involvement in or influence over the selection process, he fails to meet his burden that his protected disclosures were a contributing factor in the nonselections. *See Salinas v. Department of the Army*, 94 M.S.P.R. 54, ¶¶ 10-12 (2003).

¶34      Concerning personnel actions 2-8 and 11-12 (his nonselections for a Production Control position, three Engineering Technician positions, an Industrial Engineering Technician position, a Utilities Billing Analyst position, and three PAR positions), he stated, without more, that he "[n]ever received an eligibility letter and [was] never interviewed." IAF, Tab 1 at 39. Concerning personnel action 13 (his nonselection for a Base Support Vehicles and Equipment Site Director), the appellant stated that he was found ineligible even though his resume supported his eligibility for the position and, concerning personnel action 14 (his nonselection for a Utilities Billing Analyst position), he stated that he was informed that there was a sufficient number of veterans who applied and that, therefore, his application was not rated. *Id.* at 40. He did not present any further evidence regarding these nonselections.

¶35      The agency, however, presented unrebutted testimony from a Human Resources (HR) Specialist that the appellant's supervisors were not involved in determining whether an applicant was eligible for a position and whether an application package had been rated highly enough to be placed on a certificate of eligibles. HT2 at 408, 413-16, 421-22. Rather, such determinations were made exclusively by the agency's HR Services Center for the Northeast. HT2 at 413. In the absence of any evidence concerning either R.G.'s or J.W.'s involvement in or influence over the selection process, he fails to meet his burden that his protected disclosures were a contributing factor in these nonselections. *See Salinas*, 94 M.S.P.R. 54, ¶¶ 10-12.

<u>Remand is necessary to determine whether the agency showed by clear and convincing evidence that it would have taken personnel actions 10, 15, 16, and 17 in the absence of the appellant's protected disclosures.</u>

¶36     In determining whether an agency has met its burden of showing by clear and convincing evidence that it would have taken the same personnel actions in the absence of the protected disclosures, the Board will consider all of the relevant factors, including the following ("*Carr* factors"):  (1) the strength of the agency's evidence in support of its action; (2) the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and (3) any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated. *Soto v. Department of Veterans Affairs*, 2022 MSPB 6, ¶ 11; *see Carr v. Social Security Administration*, [185 F.3d 1318](), 1323 (Fed. Cir. 1999).  The Board does not view these factors as discrete elements, each of which the agency must prove by clear and convincing evidence.  Rather, the Board will weigh the factors together to determine whether the evidence is clear and convincing as a whole. *McCarthy v. International Boundary and Water Commission*, [116 M.S.P.R. 594](), ¶ 44 (2011), *aff'd*, 497 F. App'x 4 (Fed. Cir. 2012).

¶37     In its Remand Order, the Board found that, although the administrative judge made no explicit credibility findings regarding R.G.'s testimony, she significantly relied on his testimony in making her findings.  Remand Order, ¶ 18. The Board noted that it shared the appellant's concern regarding the administrative judge's finding that the "bullseye" comment, standing alone, was insufficient to establish a pattern of harassment from which retaliatory animus could be inferred, and it indicated that a single incident may have compelling evidentiary value.  *Id.*, ¶ 20.  It also indicated that the context surrounding the "bullseye" comment was especially troubling.  *Id.*  It therefore concluded that the administrative judge's finding that the appellant failed to show any retaliatory motive was overly dismissive and contrary to the guidance set forth in *Whitmore*.

*Id.* As a result, the Board remanded the appeal and instructed the administrative judge to reconsider the strength of the agency's motive to retaliate, examining the totality of the evidence presented in the appeal, and to address the credibility of key witnesses. *Id.*, ¶ 18 n.9, ¶ 21. It further instructed the administrative judge to especially consider the appellant's arguments in which he identified a series of acts that began shortly after his initial protected disclosure, including the letter of reprimand and the performance appraisal conducted by R.G. a few days after the "bullseye" comment. *Id.*, ¶ 21.

¶38     In the remand initial decision, however, the administrative judge did not make any explicit credibility determinations regarding R.G.'s testimony. While she did not credit his denial of making the "bullseye" comment, she nevertheless implicitly credited his testimony in finding either that the appellant failed to meet his burden on contributing factor or that the agency met its clear and convincing burden. RID at 23-28. Further, the administrative judge made no explicit findings as to the agency's motive to retaliate in the remand initial decision, and she once again summarily concluded that the "bullseye" comment did not establish a pattern of harassment directed at the appellant. RID at 28; Remand Order, ¶ 20. In reaching her conclusion, she did not examine, as instructed, the appellant's arguments in which he identified a series of acts that began shortly after making Disclosure A, including the letter of reprimand and the performance appraisal conducted by R.G. a few days after the "bullseye" comment. Remand Order, ¶ 21. Therefore, we find that the administrative judge did not fully address the appellant's arguments and evidence in this case that lend support to his claim that the agency did not prove by clear and convincing evidence that it would have taken the same personnel actions in the absence of his disclosures. Accordingly, we remand the appeal for further adjudication consistent with this Remand Order. *See Durr v. Department of Veterans Affairs*, 119 M.S.P.R. 195, ¶¶ 7-15 (2013).

¶39    On remand, the administrative judge shall examine, under *Whitmore*, whether the agency met its burden of showing by clear and convincing evidence that it would have taken the following personnel actions in the absence of the appellant's protected disclosures: (10) nonselection for a Maintenance Supervisor position; (15) denial of fill-in time; (16) delay or denial of an on-the-spot award; and (17) denial of leadership training. In conducting her analysis, the administrative judge shall make explicit credibility determinations of key witnesses (especially R.G. and J.W.), perform an analysis of the *Carr* factors, reconsider the record as a whole, and make thoroughly reasoned findings that address both the evidence supporting her conclusions and the countervailing evidence. *See Whitmore*, 680 F.3d at 1374-76.

## ORDER

¶40    For the reasons discussed above, we remand this case to the regional office for further adjudication in accordance with this remand order.

FOR THE BOARD:           /s/ for
                                     Jennifer Everling
                                     Acting Clerk of the Board

Washington, D.C.